UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISABELLE FRANKLIN, individually and behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COMMUNITY REGIONAL MEDICAL CENTER f/k/a FRESNO COMMUNITY HOSPITAL AND MEDICAL CENTER,<br><br>Defendant. | No. 1:19-cv-00709-SKO<br><br><br><br>ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISSING ACTION<br><br>(Doc. 36) |

## I.    INTRODUCTION

This matter is before the Court on Defendant Fresno Community Hospital and Medical Center's (*erroneously named* as Community Regional Medical Center f/k/a Fresno Community Hospital and Medical Center) motion to compel arbitration, filed October 23, 2019.[1] (Doc. 36.)

---

[1] Defendant also filed a Request for Judicial Notice in Support of its Motion to Compel Arbitration ("Request for Judicial Notice"). (Doc. 36-2.) Judicial Notice is governed by Federal Rule of Evidence 201, and only applies to judicial notice of adjudicative facts. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. In other words, "the fact must be one that only an unreasonable person would insist on disputing." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). In its Request for Judicial Notice, Defendant requests that the Court take judicial notice of an unpublished California Court of Appeal decision (Exh. A). However, neither Federal Rule of Appellate Procedure 32.1, nor California Rule of Court 8.1115 permit this Court to consider unpublished California state court cases. *See* Fed. R. App. P. 32.1 (permitting court to cite to unpublished federal judicial opinions); Cal. Rule of Court 8.1115 (permitting court to consider unpublished California state court opinions only in limited circumstances, such

Plaintiff Isabelle Franklin filed her opposition on November 6, 2019 (Doc. 38), and Defendant filed its reply in support of the motion to compel arbitration on November 13, 2019 (Doc. 40.) The Court reviewed the parties' papers and all supporting material and found the matter suitable for decision without oral argument pursuant to Local Rule 230(g). The hearing set for November 20, 2019, was therefore vacated. (Doc. 43.) Plaintiff thereafter was granted leave to file a sur-reply, which she filed on November 26, 2019. (Doc. 45.)

Having considered the parties' briefing, and for the reasons set forth below, Defendant's motion will be granted, and this action will be dismissed without prejudice.[2]

## II. FACTUAL BACKGROUND

Plaintiff, a registered nurse, was employed by United Staffing Solutions, Inc. ("USSI"), a contingent labor staffing provider. (Doc. 36-3, Declaration of Geoffrey C. Westbrook ("Westbrook Decl.") ¶ 2 and Ex. A; Doc. 40-1, Reply Declaration of Geoffrey C. Westbrook ("Westbrook Reply Decl.") ¶¶ 3–4 and Exs. A–C.) On November 30, 2017, Plaintiff entered into a "Mediation and Arbitration Policy and Agreement" with USSI (the "Arbitration Agreement"). (Doc. 36-3, Westbrook Decl. ¶ 2 and Ex. A.) The Arbitration Agreement, which was a term of Plaintiff's employment, contained the following provision:

> [Plaintiff] and USSI [defined to include its "owners, directors, officers, managers, or agents"] agree that if we are unable to first resolve the dispute (also called a "claim" in this Policy) informally and through mediation with a neutral mediator, we agree to use binding arbitration as the exclusive means to resolve all disputes that may arise out of or be related to your employment, including but not limited to the termination of your employment and your compensation.

*Id*. Ex. A. at 1.

On December 21, 2017, Plaintiff executed a "Travel Nurse Assignment Contract" with USSI (the "Assignment Contract"). (Doc. 40-1, Westbrook Reply Decl. ¶ 4 and Ex. C.) The Assignment Contract assigned Plaintiff to work for a minimum of thirteen weeks as a "traveler"

---

as under the doctrines of law of the case, res judicata, or collateral estoppel). Accordingly, Defendant's Request for Judicial Notice (Doc. 36-2) is denied.

[2] Also pending is Defendant's motion to file a third-party complaint for indemnity. (Doc. 37.) Because this case is subject to dismissal, Defendant's motion is DENIED as moot.

nurse at Defendant Fresno Community Hospital and Medical Center (the "Hospital").[3] (*Id*. Ex. C. ¶ 1; Doc. 36-4, Declaration of Terry Nye ("Nye Decl.) ¶ 3.) Under the Assignment Contract, Plaintiff agreed to provide USSI her availability to work "based upon assignment and shifts confirmed with USSI and the [Hospital]" and USSI in turn agreed to schedule Plaintiff to work at the Hospital a minimum number of hours per week "except as dictated by the [Hospital]'s cancellation policy for Travel personnel." (Doc. 40-1, Westbrook Reply Decl. ¶ 4 and Ex. C ¶ 2.)

The Assignment Contract set Plaintiff's total contracted hours, shift hours, hourly rates, and "travel reimbursement" for her assignment at the Hospital. (*Id*. Ex. C.) It also set the hourly rate for overtime and provided that "[a]ll overtime will be paid for all approved hours worked over 8 hours per day, or greater than 40 hours per week, as dictated by Hospital policy and/or State Law based upon your work schedule. [Please note that any overtime must be approved by USSI prior to working, or we cannot guarantee overtime compensation]." (*Id*. Ex. C ¶ 11.) USSI agreed under the Assignment Contract to process Plaintiff's payroll via weekly direct deposit and to deduct all applicable taxes. (*Id*. ¶ 10.) The Assignment Contract further provided that all "Pre-Employment Testing, Licenses & Certifications, Modules, Onboard and Annual Compliance Requirements, that are required for this assignment, are to be completed at [Plaintiff's] own time and [Plaintiff] will not be compensated for [Plaintiff's] time to finish these assignment requirements." (*Id*. ¶ 5.)

///

---

[3] At the time Plaintiff was employed by USSI and assigned to work at the Hospital, the Hospital had a contract with Comforce Technical Services, Inc. dba RightSourcing ("RightSourcing") to obtain and provide the Hospital with contingent workers. (Doc. 36-5, Declaration of Carla Milton ("Milton Decl.") ¶¶ 2–3 and Ex. A.) The Hospital engaged RightSourcing to contract directly with contingent labor staffing suppliers and to facilitate, through the suppliers, the engagement of contingent workers to work at the Hospital. (Doc. 36-5, Milton Decl. ¶ 4.) RightSourcing, in turn, retained contingent labor suppliers to assist it in filling the Hospital's continent labor staffing needs. (Id. at ¶ 5; Doc. 40-1, Westbrook Reply Decl. ¶ 3 and Ex. A.)

One such supplier was USSI. In 2015, RightSourcing and USSI entered into a "Clinical Services Supplier Agreement" (the "Supplier Agreement") to "supply contingent labor staffing services on an as needed basis to the [Hospital]." (Doc. 40-1, Westbrook Reply Decl. ¶ 3 and Ex. A.) The Supplier Agreement provided that USSI's employees assigned to the Hospital were "not employees of RightSourcing or the [Hospital]" and would remain employees of USSI. (Doc. 40-1, Westbrook Reply Decl. ¶ 3 and Ex A ¶ 2(c).) Under the Supplier Agreement, RightSourcing would provide billing statements to the Hospital for all services rendered by USSI's employees. (*Id*. Ex. A, Schedule C ¶ 1(a).) Upon receipt of payment by the Hospital, RightSourcing would then pay USSI according to the pricing terms set forth in the Supplier Agreement. (*Id*.) USSI agreed to maintain all payroll records for its employees and to calculate and pay net wages directly to its employees. (*Id*. Ex. A, ¶¶ 2(a), (c).)

///

Finally, the Assignment Contract contained an arbitration provision that provides, in reference to the Arbitration Agreement, that

> any controversy or claim arising under federal, state, and local statutory or common or contract law between [USSI] and [Plaintiff] involving the construction or application of any of the terms, provisions, or conditions of the [Assignment Contract], including, but not limited to, breach of contract, tort, and/or fraud, must be submitted to neutral binding arbitration on the written request of either Party served on the other. Arbitration is the exclusive forum for any such controversy, refer to United Staffing Solutions Inc's employee handbook for more information about our arbitration policy.

(*Id.* ¶ 21.)

Plaintiff's assignment at the Hospital was terminated on January 17, 2018. (Doc. 36-5, Milton Decl. ¶ 8.) On May 20, 2019, Plaintiff filed this putative class and collective action against the Hospital for alleged violations of the Fair Labor Standards Act, and California's Labor Code and unfair competition laws. (Doc. 1.) As alleged in her complaint, the Hospital failed to provide Plaintiff and other similarly situated nursing staff with (1) pay for all hours worked; (2) pay for all overtime worked; (3) proper meal and rest breaks; (4) complete and accurate wage statements; (5) all pay owed at the time of termination; and (6) reimbursement for business expenses. (*See id.* ¶¶ 44–52, 55, 89, 98, 108, 118, 129, 158.) Plaintiff alleges that these failures were the result of the Hospital's "longstanding policy and practice" that "fails to properly compensate non-exempt employees for work performed during meal periods, for work performed while 'off-the-clock,' and for missed rest and meal periods." (*Id.* ¶ 1.)

### III. DISCUSSION

**A. The Hospital May Enforce Plaintiff's Arbitration Agreement with USSI Under the Doctrine of Equitable Estoppel**

The Hospital moves to compel arbitration of Plaintiff's individual claims pursuant to her agreement with USSI to arbitrate. (Doc. 36.) Although it is undisputed that the Hospital is not a signatory to Plaintiff's agreement with USSI, the Hospital nonetheless contends that it has standing to enforce the agreement to arbitrate as USSI's agent and under the doctrine of equitable estoppel. (*See* Docs. 36, 40.) The Court holds that the Hospital may enforce Plaintiff's

agreement with USSI to arbitrate under the doctrine of equitable estoppel (and does not reach the issue of agency).

### 1. Legal Standard

The Federal Arbitration Act ("FAA"), which covers the arbitration agreement at issue[4], provides that any arbitration agreement within its scope "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA reflects both a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotations and citations omitted). "The United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the [FAA] if the relevant state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)).

Where a nonsignatory seeks to enforce an arbitration clause under California law, the doctrine of equitable estoppel applies in two circumstances. First, a nonsignatory may invoke equitable estoppel "when the plaintiff's claims are intimately founded in and intertwined with the underlying contract obligations." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1230 (9th Cir. 2013) (internal citations omitted). *See also Kramer*, 705 F.3d at 1128 (equitable estoppel applies when the claims are 'intimately founded in and intertwined with' the underlying contract.") (quoting *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 221 (2009)). Second, a nonsignatory may invoke equitable estoppel "when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and 'the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement.'" *Kramer*, 705 F.3d at 1128 (quoting *Goldman,* 173 Cal. App. 4th at 219). *See also Murphy*, 724 F.3d at 1230 (doctrine of equitable estoppel applies in cases where a signatory to an arbitration agreement sues nonsignatory defendants for "claims that are based on the same facts

---

[4] *See* Doc. 36-3, Westbrook Decl. Ex. A (parties "agree that . . . any claim, dispute, and/or controversy that you may have against USSI or that USSI may have against you, shall be submitted to and determined by binding arbitration under the Federal Arbitration Act ("FAA") . . . .").

5

and are inherently inseparable from arbitrable claims against signatory defendants.") (quoting *Metalclad Corp. v. Ventana Envtl. Organizational P'ship*, 109 Cal. App. 4th 1705, 1713 (2003)).

### 2. Analysis

Plaintiff does not make any allegations or bring any claims against USSI in her complaint. As such, there are no "allegations of interdependent misconduct" or claims against a signatory that are "based on the same facts and are inherently inseparable from" claims against a nonsignatory. *See Murphy*, 724 F.3d at 1230; *Kramer*, 705 F.3d at 1128. Thus, only the first theory of equitable estoppel potentially applies. *See Lucas v. Hertz Corp.*, 875 F. Supp. 2d 991, 1003 (N.D. Cal. 2012).

Even though USSI is not named, or even mentioned, in Plaintiff's complaint, a review of her claims against the Hospital demonstrate that they are "intimately founded in and intertwined with" Plaintiff's contracts with USSI. *See Murphy*, 724 F.3d at 1230. Plaintiff alleges claims under FLSA, the California Labor Code, and California unfair competition law for the Hospital's failure to pay employees overtime and the resultant waiting time penalties. (Doc. 1 ¶¶ 86–105, 117–127, 151, 165.) Plaintiff's Assignment Contract with USSI, which contains an arbitration provision and refers to the Arbitration Agreement, contains several provisions governing overtime pay: it sets Plaintiff's overtime rate, states that "[a]ll overtime will be paid by USSI," and provides that such overtime "must be approved by USSI prior to working, or [USSI] cannot guarantee overtime compensation." (Doc. 40-1, Westbrook Reply Decl. ¶ 4 and Ex. C ¶ 11.) Plaintiff also predicates her wage and hour claims on the Hospital's alleged failure to pay employees for work performed "off-the clock," including "time spent attending [the Hospital's] new hire orientation process," as well as its alleged failure to reimburse employees for expenses incurred "when traveling to hospital orientation and testing." (Doc. 1 ¶ 1, 47, 97–116, 151, 155–160, 165.) The Assignment Contract addresses the Hospital's compliance requirements, sets Plaintiff's "travel reimbursement" to be paid by USSI, and expressly provides that Plaintiff will not be compensated for any "Pre-Employment Testing, Licenses & Certifications, Modules, Onboard and Annual Compliance Requirements" that are required for her assignment. (Doc. 40-1, Westbrook Reply Decl. ¶ 4 and Ex. C ¶ 5.)

6

Throughout her complaint, Plaintiff alleges she was an "employee" of the Hospital and criticizes the Hospital's "payroll policies" and its failure to pay wages for work performed. (*See* Doc. 1 ¶¶ 8, 24, 27, 28, 31, 52, 54, 60, 76, 87, 90, 92, 101, 142, 153, 170.) Yet it is undisputed that Plaintiff was an employee of USSI. (*See* Doc. 36-3, Westbrook Decl. ¶ 2 and Ex. A. *See also* Doc. 40-1, Westbrook Reply Decl. ¶ 3 and Ex. A ¶ 2(c) (providing that USSI's employees assigned to the Hospital were "not employees of RightSourcing or the [Hospital]" and would remain employees of USSI, such that "RightSourcing and/or the [Hospital] assumes no responsibilities as to [USSI's employees] that may be imposed upon an employer under any law, regulation or ordinance."). Plaintiff entered into the Arbitration Agreement as a term of her employment with USSI. (Doc. 36-3, Westbrook Decl. ¶ 2 and Ex. A.) And, as her Assignment Contract makes clear, USSI—not the Hospital—was responsible for Plaintiff's payroll and for paying Plaintiff's wages. (Doc. 40-1, Westbrook Reply Decl. ¶ 4 and Ex. C ¶ 10. *See also id.* Westbrook Reply Decl. ¶ 3 and Ex. A, ¶¶ 2(a), (c).) The questions of whether Plaintiff has standing to sue under the FLSA or the California Labor Code as an employee of the Hospital, and, if so, whether she can maintain liability against the Hospital given USSI's role as Plaintiff's employer, cannot be answered without reference to the Assignment Contract and the Arbitration Agreement—both of which require Plaintiff to arbitrate her claims.[5] *See, e.g.*, 29 U.S.C. § 203 (defining "employer" and "employee" under FLSA); Cal. Labor Code § 1194 ("any employee" may bring an action to recover minimum wage or overtime compensation); Industrial Welfare Commission Wage Order No. 5-2001 (defining "employer" in the "public housekeeping industry," which includes hospitals).

The California Court of Appeal's decision in *Garcia v. Pexco, LLC*, cited by the Hospital, is instructive. 11 Cal. App. 5th 782 (Ct. App. 2017), *review denied* (Aug. 23, 2017). The plaintiff in that case was hired by a temporary-staffing agency, Real Time Staffing Services, LLC, and signed an arbitration agreement with Real Time. *Id.* at 784. Real Time assigned the plaintiff

---

[5] In addition to her substantive claims, Plaintiff's class- and collective-action allegations are also intertwined with her arbitration agreements with USSI. (*See, e.g*, Doc. 1 ¶¶ 71 (alleging the Hospital "maintained" and "controlled" common scheduling and payroll systems and "set the pay rates assigned to Plaintiff and Collective members"), 79 (Rule 23 common questions of law and fact as to whether the Hospital failed to compensate Plaintiff and class members, including overtime pay).)

to work for another company, Pexco, LLC (one of Real Time's clients). *Id*. The plaintiff did not sign an arbitration agreement with Pexco and Pexco was not a signatory to the arbitration agreement with Real Time. *Id*. The plaintiff later sued both Real Time and Pexco for violations of the California Labor Code and unfair business practices relating to payment of his wages. *Id*. at 785. Real Time and Pexco moved to compel the plaintiff to submit his claims to arbitration. *Id*.

The plaintiff did not challenge Real Time's arbitration demand but did challenge Pexco's, arguing that Pexco was not a signatory to the arbitration agreement and thus could not enforce it. He contended that he was "not seeking to enforce the terms and conditions of his employment contract containing the arbitration clause" and thus should not be estopped by the contract. 11 Cal. App. 5th at 786. The plaintiff asserted that he "rather only asserts causes of action based on the Labor Code" and that the contract should not estop him with respect to "claims [that] are based upon statutory violations, do not sound in contract, and cannot be deemed part of the arbitration agreement." *Id*. at 787. The Court of Appeal rejected this argument, holding that "a claim 'arising out of' a contract does not itself need to be contractual," that "[e]ven though [the plaintiff]'s claims are styled as Labor Code violations, the arbitration agreement applies," and that "[b]ecause the arbitration agreement controls [the plaintiff]'s employment, he is equitably estopped from refusing to arbitrate his claims with Pexco." *Id*. at 786, 788 (citing cases). It ordered the plaintiff to submit his claims against Pexco to arbitration, holding that the plaintiff's claims against Pexco were "intimately founded in and intertwined with his employment relationship with Real Time, which is governed by the employment agreement compelling arbitration." *Id*. at 787.

In her opposition brief, Plaintiff contends that equitable estoppel does not apply because her claims under the FLSA and the California Labor Code "arise out of statute, not out of contractual obligations" and none of her allegations "rely on USSI's employment agreement or attempt to seek any benefit from its terms." (Doc. 38 at 22, 23.) This is akin to the argument rejected in *Garcia*, which Plaintiff does not address in its opposition. Plaintiff, like the plaintiff in *Garcia*, cites no authority for this distinction and, following *Garcia*, the Court rejects it. As the

8

*Garcia* court explained, a plaintiff "cannot avoid his obligation to arbitrate his causes of action arising out of his employment relationship by framing his claims as merely statutory." 11 Cal. App. 5th at 787. While Plaintiff's claims may not expressly "rely" on her agreement with USSI to arbitrate, they, like the wage and hour claims brought in *Garcia*, are nevertheless "rooted in [her] employment relationship" with USSI and are "expressly included" in the scope of their agreement to arbitrate, *id*. at 787. (*See* Doc. 36-3, Westbrook Decl. Ex. A (the parties "agree to use binding arbitration as the exclusive means to resolve *all disputes that may arise out of or be related to your employment*, including but not limited to the termination of your employment *and your compensation*") (emphasis added); Doc. 40-1, Westbrook Reply Decl. Ex. C (the parties "hereby agree that *any controversy or claim arising under federal, state, and local statutory or common or contract law* between [USSI] and you involving the construction or application of any of the terms, provisions, or conditions of the Agreement, including, but not limited to, breach of contract, tort, and/or fraud, must be submitted to neutral binding arbitration on the written request of either Party served on the other") (emphasis added).)

Plaintiff's further attempts to distinguish her claims as "fully viable without reference to the terms of [the arbitration] agreements" because her allegations are "devoted entirely to the manner in which [the Hospital] required Plaintiff to in fact perform her job," are equally misplaced. (*See* Doc. 36 at 23.) As set forth above, what the Hospital, as opposed to USSI, required of Plaintiff is "intimately founded in and intertwined with" the terms of her Arbitration Agreement and the Assignment Contract with USSI. *See Murphy*, 724 F.3d at 1230. Accordingly, the Hospital may, under the doctrine of equitable estoppel, enforce the arbitration provisions in the Arbitration Agreement and the Assignment Contract. *See, e.g., Hughes v. S.A.W. Entm't, Ltd.*, Case No. 16-cv-03371-LB, 2019 WL 2060769, at *27 (N.D. Cal. May 9, 2019) (holding nonsignatory in putative class- and collective-action wage-and-hour labor dispute could enforce arbitration agreement on equitable estoppel grounds); *Lucas v. Michael Kors (USA), Inc.*, No. CV 18-1608-MWF (MRWx), 2018 WL 6177225, at *7 (C.D. Cal. Aug. 20, 2018) ("[R]egardless of whether the precise theory is beneficiary, agency, or estoppel, logic and case law combine to allow [the nonsignatory] to insist on arbitration.");*Ortiz v. Volt Mgmt. Corp.*,

Case No. 16-cv-07096-YGR, 2017 WL 2404977, at *2 (N.D. Cal. June 2, 2017) ("[A]s in *Garcia*, it is appropriate to allow the nonsignatory defendant to compel plaintiff into arbitration because his claims were 'intimately founded in and intertwined with his employment relationship' with the signatory staffing agency.'").

**B.     The Arbitration Agreement's Attorney's Fees and Costs Provisions Are Valid and Enforceable**

The court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Id*.

Plaintiff does not challenge the validity of the Arbitration Agreement or the Assignment Contract generally, nor does she dispute that her claims "arise out of" or are "related to" her employment and compensation. Instead, she contends—in passing in a footnote to the conclusion heading of her opposition brief—that "several provisions" of the Arbitration Agreement are "unconscionable, unenforceable, and must be severed." (Doc. 38 at 26 n.15.) Plaintiff cites only two examples: a provision waiving the right to bring an action on a private attorney general basis (*see* Doc. 36-3, Westbrook Decl. Ex. A at 5) and an attorney's fees- and costs-splitting provision (*see id*. at 6.) As Plaintiff does not assert a claim as a private attorney general in this case, the Court does not reach the issue of the enforceability of a waiver of the right to bring such a claim.

With respect to the provision requiring each party to pay its own attorney's fees and costs, Plaintiff's argument is not well taken. Under the Arbitration Agreement, Plaintiff is not required to pay the costs of the arbitration but is responsible for "[a]ll other costs and expenses associated with the arbitration, including attorney's fees."[6] (Doc. 36-3, Westbrook Decl. Ex. A at 6.) Plaintiff ignores, however, that the Arbitration Agreement also provides that the arbitrator "shall have the power to award all remedies that could be awarded by a court or administrative agency in accordance with the governing and applicable substantive law." (*Id*. at 6.)   These two

---

[6] Attorney's fees and filing fees are generally distinguishable from the "costs of arbitration," which include forum fees and arbitrators' expenses. *Armendariz v. Found. Health Psychcare Servs., Inc*., 24 Cal. 4th 83, 102 (2000).

provisions taken together provide that Plaintiff is required to pay for her own costs and attorney's fees *unless* awarded fees by the arbitrator in accordance with the governing and applicable substantive law. *See Fouts v. Milgard Mfg., Inc.*, No. C11-06269 HRL, 2012 WL 1438817, at *4 (N.D. Cal. Apr. 25, 2012) ("The logical reading of the [arbitration agreement] is that the employee shall bear the costs of his own legal representation unless he establishes a legal claim that would permit fee-shifting to occur"). This would be the result regardless of whether Plaintiff resolved her dispute in court or in arbitration. Because the attorney's fees and costs-splitting provision imposes no greater cost on Plaintiff than she would face in the absence of the Arbitration Agreement, it is therefore valid. *See, e.g., Coleman v. Jenny Craig, Inc.*, No. 11CV1301–MMA DHB, 2012 WL 3140299, at *4 (S.D. Cal. May 15, 2012) (arbitration agreement including provision that each party be responsible for paying its own costs, including attorneys' fees, valid where it "preserves the same allocation of costs that a litigant would face if he filed in court."); *Fouts*, 2012 WL 1438817, at *4.

**C.     The Court Shall Dismiss This Case**

Finally, the Court must decide whether to stay this action or dismiss it. *See Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.,* 368 F.3d 1053, 1060 (9th Cir. 2004). "If a court determines that an arbitration clause is enforceable, it has the discretion to either stay the case pending arbitration, or to dismiss the case if all of the alleged claims are subject to arbitration." *Hoekman v. Tamko Bldg. Prod., Inc.*, No. 2:14-cv-01581-TLN-KJN, 2015 WL 9591471, at *2 (E.D. Cal. Aug. 26, 2015). Here, because all of Plaintiff's claims are subject to arbitration, the Court concludes that dismissal is appropriate. *See Calzadillas v. Wonderful Co., LLC*, No. 1:19-cv-00172-DAD-JLT, 2019 WL 5448308, at *4 (E.D. Cal. Oct. 24, 2019); *Hoekman*, 2015 WL 9591471, at *9.

## IV.     CONCLUSION

For the reasons set forth above,

1.     Defendant's motion to compel arbitration (Doc. 36) is GRANTED;[7]

---

[7] The Court notes that the Arbitration Agreement requires the parties, prior to arbitration, to "make good faith efforts at resolving any dispute internally on an informal basis," and, if unsuccessful, to submit the dispute for "non-binding

11

2. Defendant's leave to file a third-party complaint for indemnity (Doc. 37) is DENIED as MOOT;

3. This action is DISMISSED without prejudice; and

4. The Clerk of Court is directed to CLOSE this case.

IT IS SO ORDERED.

Dated: **December 6, 2019**  /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE

---

mediation before a neutral third party." (*See* Doc. 36-3, Westbrook Decl. Ex. A at 5.) Neither the Hospital nor Plaintiff has indicated whether they have satisfied these prerequisites to arbitration. Nothing in this order is intended to alleviate the parties' obligations under the Arbitration Agreement in this regard.